UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL MAJESKE,

        Plaintiff,

v.

QUICKEN LOANS AND AFFILIATED
COMPANIES WELFARE BENEFITS PLAN,

        Defendant.
_____/

Case No. 18-12403

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER GRANTING [20] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING [19] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Jill Majeske, brings this suit against her employee welfare benefit plan to recover short term disability benefits. Defendant, the Quicken Loans and Affiliated Companies Welfare Benefits Plan ("the Plan"), is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff brings this action under 29 U.S.C. § 1132(a)(1)(B). The Administrative Record has been filed with the Court [Dkt. # 18], and both parties now seek summary judgment. Because Plaintiff has not shown that Defendant acted arbitrarily or capriciously when it denied her claim for benefits, Defendant's motion will be granted and Plaintiff's will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a loan underwriter at Quicken Loans, Inc. Defendant is an ERISA Employee Benefits Plan sponsored by Quicken Loans, Inc. and administered by Liberty Mutual Group.

Ms. Majeske sought treatment at Bio Energy Medical Center on May 22, 2017. She complained about a wide range of health problems, including chronic fatigue. On June 15, 2017, Ms. Majeske underwent laboratory work testing for Lyme Disease. She was tested according to Western Blot IgM method. (Administrative Record, HA0140-41). The Western Blot test measures the presence of certain antibodies against Lyme Disease and assigns their presence in various bands. (*Id.*). The three such bands that were positive from Ms. Majeske blood sample were sufficient to trigger a positive result for Lyme disease according to the laboratory's criteria, but not for those of the Center for Disease Control ("CDC"). (*Id.*). Thus, on June 30, 2017, the laboratory, IGeneX, issued a report showing that Ms. Majeske tested positive for Borreliosis, or Lyme Disease, according to the IGeneX criteria, but negative for the disease according to the CDC/NYS criteria. (*Id.*).

Ivy Carson, N.P., on an August 21, 2017 consultation, found that Ms. Majeske suffered from fatigue that was "[l]ikely related to a host of factors, including nutritional deficiencies, Hashimoto's hypothyroidism, digestive imbalances, Lyme disease, [and] Epstein Barr reactivation." (HA 0175). The next day, August 22, 2017, Ms. Carson wrote a letter "to whom it may concern" opining that it was in Ms. Majeske's best interest to take 90 days off work to pursue treatment for these ailments. (HA 0128). Ms. Carson reiterated her position in a second letter on September 14, 2017. (HA0177). A third letter, dated November 9, 2017, expanded the list of symptoms and opined that "[e]xtensive labwork performed has included the IgM Western Blot which was positive

for Borreliosis, as well as labwork confirming her autoimmune thyroiditis, multiple nutritional deficiencies, dysbiosis, and immunodeficiency…" (HA0178). She added that external stressors exacerbate symptoms and slow recovery, and that Ms. Majeske's time off work was necessary for her recovery. On November 27, 2017, the Bio Energy Medical Center Medical Director, James. R. Neuenschwander, M.D. opined that the IgeneX positive markers, along with a "non existent CD57 (activated natural killer cell) count," indicated chronic Borreliosis. (HA0179).

Dr. Neuenschwander continued to describe the indications of chronic Borreliosis as follows,

> Jill has the classic pattern of normal lymphocyte count and IP flow. Positive IgM with negative IgG western blot along with a low CD57 (in the absence of other immunodeficiency). Jill also had an elevated C-reactive protein, an indicator of inflammation, along with a high TPO antibody level indicating her hypothyroidism is due to Hashimoto's, an autoimmune disease. Based on this evidence, Jill was diagnosed with chronic Borreliosis (I am differentiating this from the acute/subacute form of Borrelia commonly known as Lyme disease) and was treated with three months of a standard oral Borrelia protocol—Doxycycline and Hydroxychloroquine. This treatment resulted in a significant increase in her symptoms (typically seen with antibiotic treatment of chronic infections and known as the Jarisch/Herxheimer reaction). These symptoms included significant increase in fatigue and brain fog, hypersomnolence, and joint pain. These symptoms resulted in the necessity for short term disability. Due to the chronicity of her symptoms, she likely needs a longer course of treatment, but is unable to pursue this at this time due to her work situation. Given the symptom complex and biochemical evidence to support her diagnosis along with the classic response to antibiotic treatment, she deserves to qualify for short term disability payment for the three months that she was under treatment." (HA0179).

Ms. Majeske filed her initial application for short term disability on August 23, 2017. (HA0106). A disability nurse manager concluded that based on the evidence before her—Ivy Carson's office notes from 8/21/2017 visit by Ms. Majeske and the aforementioned letter from Ivy Carson—restrictions and limitations were not supported "due to lack of medical evidence that would indicate a level of impairment. (*Id.*). Defendant received Ms. Majeske's first letter of appeal on September 14, 2017. (HA0107). The appeal included a summary of care and a lab order from Ms. Carson, dated 5/22/2017, lab reports dated 6/15/2017, summary of care dated 8/21/2017, and the letter dated 9/14/2017 from Ms. Carson. Ms. Majeske's claim was then reviewed by an independent physician, Dr. Sara Keiler.

Dr. Keiler spoke with Ms. Carson about Ms. Majeske's worsening symptoms, including fatigue, and joint pain. (HA0115-16). Ms. Carson told Dr. Keiler that she believed that Ms. Majeske's symptoms were caused by her Lyme disease and the treatment thereof, in addition to a history of mold exposure. (*Id.*). She disputed Ms. Carson's Lyme disease diagnosis on the grounds that Ms. Majeske tested negative according to the CDC standard for Lyme disease diagnosis. (HA0117). She also found that EBV serologies were more consistent with a past infection than a current infection. Dr. Keiler also noted that Ms. Majeske's hypothyroidism was under control with medication. Finally, Dr. Keiler also found that mold inhalation has not been linked in medical literature to fatigue, so it was a dubious explanation for Ms. Majeske's fatigue. (*Id.*).

Defendant received Ms. Majeske's second level of appeal on December 1, 2017. (HA0108). That appeal considered the November 9, and November 27, 2019 letters from Ms. Carson and Dr. Neuenschwander respectively. Ms. Carson also provided notice after the second level appeal was denied of a "new diagnosis of an autoimmune condition (Hashimoto's thyroid)." (Id.) Ms. Majeske's second level appeal was reviewed by an independent physician, Dr. Jeffrey Sartin. Dr. Sartin opined that Ms. Majeske's file lacked documentation from psychiatric providers as to whether her depression and anxiety was disabling, that it lacked documentation of physical examinations that would indicate impairing diagnoses, and that it lacked evidence of reported or observed cognitive or physical side effects to Ms. Majeske's medications. (HA0123). Dr. Sartin noted that,

> In evaluating complaints of cognitive disfunction, in particular where anxiety and depression are involved, one would generally need input from the neurological and psychiatric perspective, as well as detailed neurocognitive testing and brain imaging. These are lacking in medical evidence. (*Id.*).

Dr. Sartin also observed that Ms. Majeske's Lyme disease testing was negative according to CDC criteria for both IgM and IgG. Dr. Sartin placed several phone calls to Dr. Neuenschwander's office but was unable to reach him. (*Id.*).

Based on Dr. Sartin's and Dr. Keiler's opinions, an appeal review consultant concluded on February 6, 2018 that "the information does not contain physical or mental status examination findings, diagnostic test results, or other forms of medical documentation to verify that her symptoms were of such severity, frequency and

duration that they resulted in restrictions and limitations that rendered her unable to perform [her] duties as of August 23, 2017." (HA0110).

Ms. Majeske filed this suit on August 2, 2018. [Dkt. # 1]. On September 28, 2018 she amended her complaint [7] to name the Plan as the defendant. On April 8, 2019, both parties filed cross-motions for summary judgment [19 & 20]. Those motions are fully briefed and will be decided without oral argument pursuant to Local Rule 7.1(f)(2).

## LEGAL STANDARD

District courts are instructed to review denial of benefits challenges under 29 U.S.C. § 1132(a)(1)(B) according to a *de novo* standard, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014). "If a plan affords such discretion to an administrator or fiduciary, [the Court] review[s] the denial of benefits only to determine if it is 'arbitrary or capricious.'" *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003).

The parties dispute whether the Plan's unambiguous contract language gives the administrator such discretion. While Plaintiff argues that there is no language in the Plan to trigger the use of the arbitrary and capricious standard, Defendant points to several such statements indicating that the administrator has discretion to weigh evidence and interpret the Plan's provisions. Article V of the Quicken Loans and Affiliated Companies Welfare Benefits Plan & Summary Plan Description specifies

that the Plan Administrator will "interpret the provisions of the Plan and determine any question arising under the Plan, or in connection with the administration or operation thereof, including questions of fact," and "determine eligibility for and amount of benefits for any Covered Person." (The Plan § 5.2(a), HA0041). Under the heading "General Authority," the Plan makes clear that "[t]he Plan Administrator will have all the powers necessary or appropriate to carry out its duties, including the discretionary authority to interpret the provisions of the Plan and the facts and circumstances of claims for benefits, and to decide questions of fact related thereto." (*Id.* at § 5.2(b), HA0042). This language is sufficient to establish that "the Plan administrator reserves discretionary authority to determine eligibility and construe policy terms." *Schwalm v. Guardian Life. Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).

Plaintiff contends that such language is without legal effect because it violates Michigan Law. The Michigan Office of Financial and Insurance Services has prohibited insurance policies to contain discretionary clauses. MICH. ADMIN. CODE. R. 500.2201-02 (2012). In the case of an insurance policy that gave discretionary power to the administrator, MICH. ADMIN. CODE R. 500.2202 dictated that a denial of benefits challenge be accorded *de novo* review, for that provision would be voided. *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009); *see also Rice-Peterson v. UNUM Life. Ins. Co. of Am.*, 2013 WL 1250457 (E.D. Mich. Mar. 26, 2013).

The Plan is self-funded, however, and therefore not an insurance policy. A self-funded plan is one where the employer "does not purchase an insurance policy from

any insurance company in order to satisfy its obligations to its participants." *FMC Corp. v. Holliday*, 498 U.S. 52, 54, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990). The Summary Plan Description provides that Quicken Loans, Inc. pays for the plan. (HA0024) ("The cost of the plan is funded 100% by Employer contributions.").

Section 514(a) of ERISA provides that ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The statute then provides two clarifications that work at cross-purposes. The first provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 1144(b)(2)(A). The second provides that no employee benefit plan "shall be deemed to be an insurance company or other insurer...or to be engaged in the business of insurance…for purposes of any law of any State purporting to regulate insurance companies." § 1144(b)(2)(B).

§ 1144(b)(2)(B) provides that a self-funded plan cannot be subject to state laws that conflict with ERISA. *Holliday*, 498 U.S. at 64-65. District courts sitting in Michigan have therefore refrained from enforcing MICH. ADMIN. CODE R. 500.2202 against self-funded group benefit plans. *See Guest-Marcotte v. Life Ins. Co. of N. Am.*, Case No. 15-cv-10738, 2016 U.S. Dist. LEXIS 33815 *23 (E.D. Mich. Feb. 17, 2016); *Shumpert v. GM Life & Disability Benefits Program for Hourly Emples.*, Case No. 2:12-cv-14786, 2014 U.S. Dist. LEXIS 54850 * 15 (E.D. Mich. Apr. 21, 2014); *Moskal v. Aetna Life Ins. Co.*, Case No. 10-cv-14980 2012 U.S. Dist. LEXIS 2599 *6 (E.D. Mich. Jan. 10, 2012). The provisions of the plan granting discretionary powers to the plan

administrator are therefore and enforceable, and the arbitrary and capricious standard of review therefore applies.

The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." *Perry v. United Food & Commercial Workers Distrib. Unions 405 & 422*, 64 F.3d 238, 242 (6th Cir. 1995). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. *Id.* The standard calls for a decision to "be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

## ANALYSIS

Defendant opted to credit the medical opinions of its own experts, Dr. Keiler and Dr. Sartin, over those of Ms. Majeske's experts, Ms. Carson and Dr. Neuenschwander. Such a decision is acceptable if it is supported by substantial evidence. There is no treating physician rule in ERISA denial of benefits cases.

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with the treating physician's evaluation.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Dr. Keiler and Dr. Sartin both provided written reports on the evidence explaining the grounds for their disagreements with Dr. Neuenschwander and Ms. Carson. Plaintiff's Motion and Response do not contest Defendant's findings on most of Plaintiff's ailments, including that her hypothyroidism was under control by medication and that her EBV serology was consistent with past infection. She does, however, contend that Defendant erred when it discounted her treating physician's diagnosis of chronic borreliosis.

Ms. Majeske's lab-work for the IgM Western Blot test came back negative according to the CDC criteria and positive according to the IgeneX criteria. (HA0140). Dr. Keiler and Dr. Sartin both opined that such a result was "not consistent with active Lyme disease." (HA 0118; HA0124). Defendant agreed with them. It is not unreasonable for an ERISA plan administrator to credit the opinion of reviewing physicians who disagree with the IgeneX diagnostic criteria. *See Brown v. Federal Exp. Corp.*, 610 Fed. Appx. 498, 505 (6th Cir. 2015) (finding that where an administrator denied benefits despite a plaintiff having tested positive for Lyme Disease under the IgeneX criterion but negative under the CDC criterion, it did not act arbitrarily or capriciously); *see also Allen v. Life Ins. Co. of North America*, Case No. 1:02-cv-3-M, 2010 WL 989159 * 12 (W.D. Ky Mar. 12, 2010) (an administrator did not act arbitrarily or capriciously by denying benefits to a claimant who presented objective evidence of symptoms consistent with Lyme Disease coupled with an "equivocal" IgM test).

Dr. Neuenschwander, in his November 27, 2017 letter clarifies the diagnosis of his Nurse Practitioner to argue that Ms. Majeske has "chronic Borreliosis," an underdiagnosed and misunderstood condition that is distinct from Lyme Disease. That the administrator did not find this opinion tantamount to objective evidence of Lyme Disease according to CDC standards is not unreasonable. *See Dutkewych v. Standard Ins. Co.*, Case No. 12-cv-11073, 2014 WL 1334169 (D. Mass. Mar. 29, 2014) (holding that an administrator acted reasonably by refusing to credit a treating physician's diagnosis of "chronic Lyme disease" after testing positive for the disease under the IGeneX criteria but negative under the CDC criteria).

Further, Ms. Majeske did not present her Plan with sufficient objective evidence of how her chronic Borreliosis rendered her unable to perform her work. No psychiatric, cognitive, or neurological tests were included in her file. It was therefore not unreasonable for Dr. Keiler and Dr. Sartin to observe that there was inadequate objective evidence to support the limitations claimed. The Court has no grounds to remand this decision to the Plan administrator. "As numerous courts have held, an administrator's decision to deny benefits is reasonable and rational in the absence of objective medical evidence to substantiate the claim of disability." *Kehrier v. Lumbermens Mut. Cas. Co.*, Case No. 05-cv-71338-DT 2006 WL 2830068 (E.D. Mich. Sept. 29, 2006) (citing *Wilkins v. Baptist Healthcare System, Inc.* 150 F.3d 609, 619 (6th Cir. 1998)).

Plaintiff argues that Defendant should have conducted its own medical examinations of Ms. Majeske. She relies on *Koning v. United of Omaha Life. Ins*. Co., 627 Fed. Appx. 425 (6th Cir. 2015) which held that an administrator erred when it did not consider evidence in the claimant's favor and did not conduct its own physical examination of the claimant even where it disagreed with her treating physicians' physical examinations. There are two critical differences between that case and this one, however. First, *Koning* was decided on *de novo* review, and so the court was at liberty to remand the case for not reaching the best decision, whereas this Court can only remand a decision that was arbitrary and capricious. Second, the claimant in *Koning* submitted objective medical evidence of her disability that the administrator discounted, which the administrator second-guessed. The *Koning* Court noted that "there is nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician. *Koning*, 627 Fed. Appx. at 436 (quoting *Calvert v. Firstar Fin. Inc*., 409 F.3d, 286, 297 n. 6 (6th Cir. 2005). Nevertheless, it found that the administrator's failure to conduct its own physical evaluation was improper where a file reviewer found that the claimant could do sedentary work despite a functional capacity examination that found that she could not sit for more than thirty minutes at a time. *Id.* Ms. Majeske's file, by contrast, contains no objective evidence of her mental or physical limitations.

## CONCLUSION

Because the Quicken Loans and Affiliated Companies Welfare Benefit Plan is a self-funded plan governed by ERISA, provisions granting discretionary authority to the Plan administrator are legal and enforceable. Since this Plan contains such language, the Court can only review its decision to deny Ms. Majeske short term disability benefits according to the arbitrary and capricious standard. Under that standard, an administrator's decision will be upheld if it is supported by substantial evidence. Dr. Keiler's and Dr. Sartin's review of Ms. Majeske's file provided substantial evidence to justify the Plan's denial of Ms. Majeske's claim.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [20] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [19] is **DENIED**.

**SO ORDERED**.

Dated: July 11, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge